UNITED STATES DISTRICT COURT      <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK

---

PLATTE RIVER INSURANCE COMPANY,

Plaintiff,

- against -

SAQUIB KHAN, NABILA HUSSAIN,
MOHAMMAD ALI HUSSAIN, RICHMOND
FOOD, INC., BLOOMINGDALE FUEL
CORP., MANOR BAGELS OF SI, INC.,
RICHMOND SERVICE STATION,
RICHMOND FIESTA MARKET, INC.,
LEWIS SHAPIRO, and SUSAN SHAPIRO,

Defendants.

---

NGM INSURANCE COMPANY,

Plaintiff,

- against -

NABILA HUSSAIN, BLOOMINGDALE SI
INC. a/k/a BLOMINGDALE S.I. INC.,
BLOOMINGDALE  FUEL INC. a/k/a
BLOOMINGDALE  FUEL CORP., MANOR
BAGELS OF SI, INC., RICHMOND FIESTA
MARKET INC. a/k/a RICHMOND FIESTA
MARKET, INC., RICHMOND
NEWSSTAND OF STATEN ISLAND, INC.
a/k/a RICHMOND NEWSTAND OF
STATEN ISLAND, INC., RICHMOND
SERVICE STATION INC. a/k/a RICHMOND
SERVICE STATION (A CORPORATION),
RICHMOND SUPERETTE, INC.,
RICHMOND FOOD, INC., SK ARDEN INC.
a/k/a SK ARDEN, INC., SKZ GASOLINES
INC. a/k/a SKZ GASOLINE INC., and
ROSSVILLE SERVICES, INC. a/k/a
ROSSVILLE SERVICES INC.,

Defendants.

---

MEMORANDUM
<u>AND ORDER</u>


13-CV-3265 (JG)(SMG)




13-CV-3416 (JG)(SMG)

APPEARANCES

WOLFF & SAMSON PC[1]
  140 Broadway, 46th Fl.
  New York, NY 10005
By: Darryl Weissman
  Scott W. Lichtenstein
  *Attorneys for Plaintiff Platte River Insurance Company*

LAW OFFICE OF HOWARD M. FILE
  260 Christopher Lane
  Staten Island, NY 10312
By: Howard M. File
  *Attorneys for Defendants/Cross-Defendants Nabila Hussain, Mohammad Ali*
  *Hussain, Richmond Food, Inc., Richmond Service Station, and Richmond Fiesta*
  *Market, Inc.; Defendants/Cross-Defendants Richmond Fiesta Market Inc. a/k/a*
  *Richmond Fiesta Market, Inc., Richmond Service Station Inc. (a Corporation)*
  *a/k/a Richmond Service Station, Richmond Food, Inc.*

LAW OFFICE OF JOHN Z. MARANGOS
  1134A Hylan Blvd.
  Staten Island, NY 10305
By: John Z. Marangos
  *Attorneys for Defendants/Cross-Claimants/Cross-Defendants Bloomingdale*
  *Fuel Corp. and Manor Bagels of SI, Inc.; Defendants/Cross-Claimants*
  *Bloomingdale Fuel Inc. a/k/a Bloomingdale Fuel Corp, Rossville Services, Inc.*
  *a/k/a Rossville Services Inc., Richmond Superette, Inc., Bloomingdale SI Inc.*
  *a/k/a Bloomingdale S.I. Inc.*

TARTER KIRINSKY & DROGIN LLP
  1350 Broadway
  New York, NY 10018
By: Gabriel Levinson
  Christopher Tumulty
  *Attorneys for Defendants/Cross-Claimants/Cross-Defendants Lewis Shapiro and*
  *Susan Shapiro*

---

[1] Effective May 1, 2015, Wolff & Samson PC changed its name to Chiesa Shahinian & Giantomasi PC.  *See* ECF No. 99.

MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP
   Wall Street Plaza
   88 Pine Street, 24th Fl.
   New York, NY 10005
By:   Adam Rafe Schwartz
      Scott A. Levin
      *Attorneys for Plaintiff NGM Insurance Company*


JOHN GLEESON, United States District Judge:

In these two separate but related cases, a plaintiff surety is seeking summary or default judgment on claims arising from a general indemnity agreement with the defendants. The indemnity agreement served as consideration for the plaintiff sureties to execute bonds securing Richmond Wholesale Co., Inc.'s ("Richmond") contractual obligations in connection with Richmond's purchase of cigarette tax stamps on credit from various municipalities. Richmond failed to meet its obligations and is currently in involuntary Chapter 7 bankruptcy proceedings. Both sureties entered into settlements as part of Richmond's bankruptcy proceedings and have initiated the instant lawsuits against Richmond's co-indemnitors.

Platte River Insurance Company ("Platte River") seeks summary judgment against defendants Nabila Hussain, Mohammad Ali Hussain (collectively, the "Hussain Defendants"), Richmond Food, Inc., Bloomingdale Food Corp., Manor Bagels of SI, Inc., Richmond Service Station, and Richmond Fiesta Market, Inc., as well as an entry of default judgment against Saquib Khan.[2] Platte River's claim arises out of two general indemnity agreements, in consideration for which it executed a bond for the principal Richmond. In two

---

[2]      Platte River has not moved for summary judgment against the defendants Lewis Shapiro and Susan Shapiro.

separate motions, the defendants,[3] with the exception of Lewis and Susan Shapiro, cross-move for summary judgment against Platte River.

NGM Insurance Company ("NGM") seeks summary judgment against defendants Nabila Hussain; Bloomingdale SI Inc. a/k/a Bloomingdale S.I. Inc.; Bloomingdale Fuel Inc. a/k/a Bloomingdale Fuel Corp. ("Bloomingdale Fuel"); Manor Bagels of SI, Inc. ("Manor"); Richmond Fiesta Market Inc. a/k/a Richmond Fiesta Market, Inc. ("Richmond Fiesta"); Richmond Service Station Inc. a/k/a Richmond Service Station (a Corporation) ("Richmond Service"); Richmond Superette, Inc. ("Richmond Superette"); Richmond Food, Inc. ("Richmond Food"); and Rossville Services, Inc. a/k/a Rossville Services Inc. ("Rossville Services"). NGM also seeks a default judgment against defendants Richmond Newsstand of Staten Island, Inc. a/k/a Richmond Newstand of Staten Island, Inc.; SK Arden Inc. a/k/a SK Arden, Inc.; and SKZ Gasolines Inc. a/k/a SKZ Gasoline Inc (collectively, the "Defaulted Defendants"). Defendants Nabila Hussain, Richmond Fiesta, Richmond Food, and Richmond Service cross-move for summary judgment against NGM.

For the reasons explained below, Platte River's motions for summary judgment and default judgment are granted, and defendants' cross-motions for summary judgment are denied. NGM's motions for summary judgment and default judgment are granted, and defendants' cross-motion for summary judgment is denied.

A.      *Platte River Insurance Company v. Khan et al.*

1.      *Background*

Unless otherwise noted, the following facts are undisputed in the parties' statements submitted pursuant to Local Rule 56.1 and their supporting materials.

---

[3]      Unless otherwise noted, the term "defendants" when used in Part A, *infra*, refers to the defendants in *Platte River Insurance Company v. Khan et al.,* No. 13-CV-3265 (JG)(SMG), and in Part B, *infra*, to the defendants in *NGM Insurance Company v. Hussain et al.*, No. 13-CV-3416 (JG)(SMG).

a.       *The New York State Cigarette Tax Regime*

Richmond was licensed by the State of New York (the "State") as a wholesaler of cigarettes. Platte River Rule 56.1 Stmt ¶ 6. The State taxes the possession and sale of cigarettes and requires that each package of cigarettes bear a stamp evidencing that these taxes have been paid. *Id.* ¶ 7. The State collects this tax from licensed wholesalers, like Richmond, who purchase cigarette tax stamps and place them on each package of cigarettes, thus indicating that the taxes (which are ultimately passed down to the consumer through the price of the cigarettes) have been paid. *Id.* ¶ 8. The wholesalers may receive such stamps on credit by posting a credit bond like those issued by the plaintiff in this case, which guarantees the wholesaler's payment for the tax stamps within thirty days of receipt thereof. *Id.* ¶ 9.

b.       *The Bond and General Indemnity Agreements*

On or about November 16, 2010, Platte River executed a credit bond (the "Bond") on behalf of Richmond, in favor of the State, in the amount of $3 million, in order to secure Richmond's receipt, on thirty days' credit, of stamps evidencing payment of the cigarette tax due under Article 20, and the prepaid cigarette tax due under Section 1103 of Article 28 of the New York Tax Law. *Id.* ¶ 1; Affidavit of Ron Wills ("Wills Affidavit" or "Wills Aff.") ¶ 3, Ex. A.

On or about November 5, 2010, and once again on November 12, 2010, in exchange for Platte River's agreement to furnish bonds to Richmond, defendants Saquib Khan, Nabila Hussain, Mohammad Ali Hussain, Richmond Food, Inc., Bloomingdale Food Corp., Manor Bagels of SI, Inc., Richmond Service Station and Richmond Fiesta Market, Inc. each executed General Indemnity Agreements (the "November 5, 2010 Indemnity Agreement" and the "November 12, 2010 Indemnity Agreement," and collectively, the "Indemnity Agreements")

in favor of Platte River.  Platte River Rule 56.1 Stmt ¶ 2.  These agreements are identical in all

relevant respects.  Pursuant to Section 2, the defendants agreed to, *inter alia*,

> indemnify, and keep indemnified, and hold and save harmless [Platte River] against all demands, claims, loss, costs, damages expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore [sic], sustained or incurred by [Platte River] by reason of executing or procuring the execution of any said Bond(s), or any other Bond(s) . . . for or at the request of [Richmond] . . . or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained.

Wills Aff., Ex. B § 2, Ex. C § 2, ECF No. 90-4.

Platte River and Richmond subsequently executed change riders in December

2010 and August 2011 that increased the penal sum of the Bond to $4,615,200.  Platte River

Rule 56.1 Stmt ¶ 4; Wills Aff., Exs. D & E.  These increases are addressed in Section 19 of the

Indemnity Agreements, which provides, *inter alia*:

> **Surety's right to consent to changes.**  [Defendants] hereby consent and agree that [Platte River] shall have the right, and is hereby authorized and empowered but not required: (a) To increase or decrease the penalty or penalties of any of the Bonds(s) . . . to execute any continuations, enlargements, modifications, and renewals thereof . . . it being agreed that this Agreement shall apply to and cover such new or changed Bond(s) or renewals even though the consent of [Platte River] may or does substantially increase the liability of [defendants] . . . .

Wills Aff., Ex. B § 19, Ex. C § 19 (emphasis in original).

  c.  *Richmond's Breach of the Bonded Obligations and Platte River's Resulting Damages*

On or about February 12, 2013, the State asserted a claim against the Bond in the

full amount of the Bond's penal sum of $4,615,200.  Platte River Rule 56.1 Stmt ¶ 10.  Under the

Indemnity Agreements, Platte River possesses "the exclusive right for itself and for [defendants] to decide . . . whether any claim, demand, suit, or judgment upon the Bond(s) shall be paid, settled, defended or appealed." Wills Aff., Ex. B § 10, Ex. C § 10. As a result of Richmond's failure to perform the bonded obligation to the State for tax stamps received on credit, and after investigating the validity of the claim, Platte River paid the State's claim against the Bond and sustained an initial loss of $4,615,200. Platte River Rule 56.1 Stmt ¶ 12. Following litigation in state court, and negotiations in an involuntary Chapter 7 proceeding commenced against Richmond, Platte River offers evidence that it has been able to recover $2,635,565.21, leaving it with a net loss of $1,979,634.79 from the initial $4,615,200 loss under the Bond. *Id.* ¶ 13; Wills Aff. ¶¶ 15-19, Exs. I & J.

   In addition, Platte River claims that it has incurred costs and expenses in the total amount of $963,194.79 as a result of performing its obligations under the Bond on behalf of Richmond. *Id.* ¶ 14. These expenses include attorneys' fees, consultant's fees, investigative fees, and other disbursements, all of which defendants agreed to indemnify Platte River for in Section 2 of the Indemnity Agreement. *Id.* When the Bond was first issued, Platte River was provided an Irrevocable Letter of Credit (the "ILOC") in the amount of $800,000 (as adjusted by rider), established by Habib American Bank and in favor of Platte River as collateral for the account of Richmond. *Id.* ¶ 15. Platte River drew down upon the ILOC in accordance with Sections 4 and 8 of the Indemnity Agreements, leaving Platte River with net costs and expenses of $163,194.79. *Id.* ¶ 16. Defendants agreed not only to indemnify Platte River for these losses, costs, and expenses, but also to pay simple interest thereupon at the annual rate of 12%. *See id.* ¶ 17; Wills Aff., Ex. B § 10, Ex. C § 10.

As evidence of these damages, Platte River has submitted a ledger of payments it has made in performing its obligations under the Bond. *See* Wills Aff., Ex. K. As part of the Indemnity Agreements, defendants agreed that the ledger and the Wills Affidavit would constitute *prima facie* evidence of Platte River's damages. Specifically, Section 10 of the Indemnity Agreements provides:

> The voucher(s) or other evidence of such payment, settlement, or compromise shall be prima facie evidence of the fact and extent of the liability of [defendants] . . . jointly and severally, to [Platte River] arising from any of the obligations contained in or arising from any and all obligations created by this Agreement of Indemnity or any Bond(s) written by [Platte River] pursuant to this Agreement, and in all matters arising between [defendants] and [Platte River].

Wills Aff., Ex. B § 10, Ex. C § 10.

2.     *Discussion*

    a.     *Legal Standard*

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is warranted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *see also Trs. of Bldg. Servs. 32B-J, Pension, Health and Annuity Funds v. Linden Realty Assocs.*, No. 94-CV-1358 (CPS), 1995 WL 302454, at *3 (E.D.N.Y. May 8, 1995) ("Since this case requires only an interpretation of the law governing the construction and effect of unambiguous contract terms, summary judgment is appropriate.").

b.     *Platte River's Prima Facie Evidence*

Platte River has submitted the Wills Affidavit, to which is attached, as Exhibit K, a ledger of payments made by Platte River as a result of performing its obligations under the Bond.  As discussed above, defendants agreed in Section 10 of the Indemnity Agreements that evidence such as the ledger and the Wills Affidavit would constitute *prima facie* evidence of Platte River's damages.  In addition, Platte River has also submitted (a) the Certification of Darryl Weissman ("Weissman Cert."), which authenticates the attorneys' fees incurred by Platte River as a result of executing the Bond, and (b) the Affidavit of Robert M. Kelley, CPA, which authenticates the fees incurred by Platte River for forensic accounting services.  *See* ECF Nos. 90-5 & 90-3.

Under New York law, "pursuant to an indemnity agreement[,] the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee."  *Berkley Reg'l Ins. Co. v. Weir Bros., Inc.*, No. 13-CV-3227 (CM)(FM), 2013 WL 6020785, at * 7 (S.D.N.Y. Nov. 6, 2013) (citations and quotation marks omitted).

Defendants question the reasonableness of the settlement agreement that Platte River entered into during the Richmond bankruptcy, but I am unpersuaded that the settlement amount was unreasonable.  Putting aside the fact that defendants granted Platte River the exclusive authority to settle the bankruptcy claims, *see* Indemnity Agreements § 10, *supra*, the actual settlement amount of $2,635,565.21, when compared to the initial loss of $4,615,200, does not strike me as an unreasonable sum.  The settlement followed a year-long dispute between Platte River, the trustee, and several banks as to whether and to what extent Richmond's

bankruptcy estate contained trust funds to which Platte River was entitled, or kited funds to which other parties were entitled. *See generally* Weissman Cert. ¶¶ 18-29, ECF No. 90-5. Had Platte River litigated the dispute, it might have lost and recovered nothing, leaving defendants facing more than twice their current exposure. Platte River would also have incurred significant additional costs, for which defendants would be liable.

In short, defendants ignore the realities of the bankruptcy litigation in protesting that there were "full assets of satisfaction . . . available to Plaintiff," *see* Affidavit of John Z. Marangos ("Marangos Aff.") ¶ 9, ECF No. 92, or that "the Bankruptcy trustee had available . . . more than enough to satisfy Platte's claim . . ." *See* Affidavit of Nabila Hussain ("Hussain Aff.") ¶ 7, ECF No. 94-1. I conclude as a matter of law that the settlement was reasonable. Accordingly, I find that Platte River has established a *prima facie* case for damages.

c. *Equitable Estoppel*

Defendants Bloomingdale Food Corp. and Manor Bagels of SI, Inc. contend that while they agreed to indemnify Platte River should Richmond breach its bond obligations, they never agreed to allow Platte River to settle its claim against Richmond for a lesser sum than it could have obtained, and to seek indemnification from them for the difference. *See* Marangos Aff. ¶¶ 7-9. Again, the essence of the claim is that Platte River had it within its power to get full recovery during the Richmond bankruptcy, but instead settled for a lesser amount, in contravention of some perceived promise or representation to do otherwise. However, as the Second Circuit has noted, "'the party who is to be estopped . . . must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated' and then later attempted to take a contradictory stance in that or another

proceeding." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 395-96 (2d Cir. 2011)

(quoting *Maitland v. Univ. of Minn.*, 43 F.3d 357, 364 (8th Cir. 1994)).

The Indemnity Agreements themselves contain no such representation, and in fact

they undermine defendants' argument. Section 21 of the Indemnity Agreements clearly states

that Platte River "shall be entitled to enforce the obligations hereof directly against any or all of

the [defendants] without the necessity of first proceeding against [Richmond]." Wills Aff., Ex. B

§ 21, Ex. C § 21. In other words, according to the plain text of the Indemnity Agreements, Platte

River was not required to recover *any amount* from Richmond much less a sum meeting the

approval of the indemnitors. An attempt to seek recovery against the principal Richmond was

not even a condition precedent for seeking relief against the defendants. The "NOW,

THEREFORE" clause of the Indemnity Agreements, under which defendants agreed to be

"jointly and severally" required to perform the obligations set forth therein, further supports this

interpretation. *See* Wills Aff., Ex. B at 1; Ex. C at 1.[4]

Even assuming that Platte River was required to pursue Richmond before seeking

relief from other indemnitors, the defendants clearly granted Platte River the exclusive power to

"decide and determine whether any claim, demand, suit, or judgment upon the Bond(s) shall be

paid, settled, defended or appealed" and "any loss, costs, charges, expense or liability thereby

sustained or incurred . . . shall be borne and paid immediately by [defendants]." Wills Aff., Ex.

B § 10, Ex. C § 10.

---

[4] For similar reasons, I am unpersuaded by the Hussain Defendants' argument that Platte River's motion is premature in light of the ongoing Richmond bankruptcy. *See* Hussain Mem. of Law at 6, ECF No. 90-2. This argument fails to address (a) defendants' agreement in Section 21 that Platte River may seek indemnity from defendants without first pursuing claims against Richmond, and (b) defendants' joint and several liability under the Indemnity Agreements alongside Richmond, their co-indemnitor.

4.      *Accord and Satisfaction*

In a similar vein, defendants argue that Platte River's settlement in the Richmond bankruptcy was an "accord and satisfaction" of defendants' obligations under the Indemnity Agreements. It is well-settled that an "accord and satisfaction" will not arise unless "there was a meeting of the minds, and . . . the offer by the debtor was clearly tendered as full satisfaction of the debt, and the payment was knowingly accepted." *Lamb v. Emhart Corp.*, 47 F.3d 551, 561-62 (2d Cir. 1995). Platte River correctly observes there was no such meeting of the minds here. There are simply no facts indicating that the settlement payment was tendered to Platte River in full satisfaction of defendants' obligations to Platte River under the Indemnity Agreements. To the contrary, Platte River explicitly reserved its rights against defendants in the Stipulation and Order memorializing the bankruptcy settlement: "[N]othing in this Stipulation shall prevent Platte River . . . from pursuing any claims against non-Parties, including, without limitation, any and all non-Debtor indemnitors and guarantors for any amounts that Platte River . . . assert are owed to it . . . ." Wills Aff., Ex. J ¶ 10.

5.      *The Alleged Release of the Hussain Defendants from Obligations Under the November 5, 2010 Indemnity Agreement*

Nabila Hussain and Mohammad Hussain maintain that even if the language of the Indemnity Agreements would otherwise make them liable, Platte River nonetheless released them from their obligations under the November 5, 2010 Indemnity Agreement.[5] On April 27, 2012, the Hussain Defendants sent Platte River a letter requesting that that they "be released from any and all obligations under [the November 5, 2010 Indemnity Agreement]." *See* Hussain

---

[5]      Platte River's release of the Hussain Defendants pertains only to the November 5, 2010 Indemnity Agreement, as the Hussain Defendants' release request mentions only that particular agreement. *See* Hussain Aff., Ex. F. The Hussain Defendants have put forward no proof that they sought a release, or were released, with respect to the November 12, 2010 Indemnity Agreement. Platte River, for its part, asserts that it received no request, and granted no release, with respect to the November 12, 2010 Indemnity Agreement. *See* Wills Aff. ¶ 30, Ex. N.

Aff., Ex. F, ECF No. 94-8.  Platte River responded in a May 23, 2012 letter, stating that pursuant

to Section 18 of the November 5, 2010 Indemnity Agreement the "termination is effective June

15, 2012."  *See* Hussain Aff., Ex. G, ECF No. 94-9.  This letter also states:

> Section 18 also provides that the termination of this agreement by
> any Indemnitor shall not relieve such Indemnitor from any liability
> to the Surety arising out of bonds executed, provided or procured
> by the Surety on behalf of the Principal, prior to the effective date
> of such termination.  Please review the text of Section 18 in its
> entirety for complete understanding of the termination conditions.

*Id.*  The Hussain Defendants interpret this language to mean that they were no longer obligated

to indemnify Platte River for any of Richmond's cigarette tax obligations that arose after June

15, 2012.  Accordingly, the argument goes, since Platte River seeks to recover funds expended

on a claim for unpaid taxes that accrued in February 2013, neither Nabila Hussain nor

Mohammad Hussain is liable.  *See* Hussain Aff. ¶ 5.

However, Section 18 of the Indemnity Agreements, directly referenced in Platte

River's May 23, 2012 letter, provides the Indemnity Agreements are a "continuing obligation"

that applies to "any and all Bonds . . . heretofore or hereafter executed by [Platte River] on behalf

of [defendants] . . . until this Agreement shall be cancelled according to its terms."  Wills Aff.,

Ex. B § 18, Ex. C § 18.  Under the terms of Section 18, the defendants had the option to

extinguish this "continuing obligation" by providing notice of their withdrawal from the

Indemnity Agreements.  If they so notified Platte River, they would not be liable:

> for any Bond(s) executed by [Platte River] after the effective date
> of such notice; PROVIDED HOWEVER, that as to any and all
> such Bonds executed or authorized by [Platte River] prior to
> effective date of such notice and as to all and all renewals,
> continuations and extensions thereof . . . [defendants] shall be and
> remain fully liable therefore [sic], as if said notice had not been
> served.

*Id.* (emphasis in original). Thus, it is clear that the Hussain Defendants are still fully liable for any obligations arising out of bonds that were executed prior to the effective date of termination, *i.e.* June 15, 2012. The Bond at issue in this case was executed by Platte River on November 16, 2010, over a year before the termination date. While the release stopped the defendants' continuing obligation to indemnify Platte River for any bonds executed after June 15, 2012, it did not otherwise alter the Hussain Defendants' obligations under the Indemnity Agreements.

6.   *Impairment of Recourse Under U.C.C. § 3-306 and Impairment of Collateral*

  Contrary to the Hussain Defendants' assertions, the Indemnity Agreements are not negotiable instruments, and therefore, Article 3 of the UCC did not impose upon Platte River any duties with respect to settling its bankruptcy claim in the Richmond bankruptcy. *See Mfrs. & Traders Trust Co. v. Int'l Packaging, Inc.*, 617 N.Y.S.2d 91, 92 (4th Dep't 1994) ("Because the guaranty agreements were not negotiable instruments, no triable issue of fact exists regarding the impairment of any right of recourse against the principal obligor."); *Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 209 (S.D.N.Y. 1995); *Backman v. Hibernia Holdings, Inc.*, No. 96-CV-9590 (LAP), 1998 WL 427675, at *5 (S.D.N.Y. July 28, 1998).

  The fact that Platte River drew upon the Irrevocable Line of Credit did not amount to an improper impairment of collateral. The ILOC was not held in trust for defendants, but was rather provided on behalf of Richmond in favor of Platte River. Wills Aff. ¶ 24, Ex. L. Pursuant to the Indemnity Agreements, defendants "authorize[d] and agree[d] that all collateral . . . held by or assigned to [Platte River] may be used by [Platte River] at anytime in payment of any claim, loss, or expense incurred by [Platte River]." *Id.*, Exs. B § 4, C § 4.

7. *Default Judgment against Saquib Khan*

Defendant Saquib Khan was personally served with the Summons and Amended Complaint, and a certificate of default was filed against him on January 31, 2014. *See* ECF Nos. 30 & 43.

Since Khan failed to answer or move with respect to the Amended Complaint, and Platte River has presented *prima facie* evidence of its damages, Platte River is entitled to default judgment against Khan for (a) Platte River's net loss to date of $1,979,634.79; (b) Platte River's net costs and expenses to date of $163,194.79; (c) additional legal fees to be incurred by Platte River; and (d) simple contractual interest on Platte River's loss, costs, and expenses at the rate of 12% per annum, all with post-judgment interest.

B.  *NGM Insurance Company v. Hussain et al.*

1.  *Background*

a.  *The Bonds and Indemnity Agreement*

NGM issued bonds to Richmond in connection with Richmond's purchase of cigarette tax stamps on credit from various municipalities, including the State of New York, City of New York, and Commonwealth of Pennsylvania. NGM's Rule 56.1 Stmt ¶ 1; Certification of Eli Cinq-Mars ("Cinq-Mars Certification" or "Cinq-Mars Cert.") ¶ 3, ECF No. 47-3. For consideration, the defendants signed a General Agreement of Indemnity (the "NGM Indemnity Agreement") [6] with NGM, under which they jointly and severally agreed, among other things, to "indemnify and save [NGM] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [NGM] may pay or incur in consequence of having

---

[6]     The NGM Indemnity Agreement is attached as an exhibit to the Cinq-Mars Certification, ECF No. 47-3, at NGM0046-68. The exhibits to the Cinq-Mars Certification were attached in one document as a separate filing, which for the purposes of this Memorandum and Order is referred to as "Ex. 1."

executed, or procured the execution of, such bonds . . . ."  *See* NGM Indemnity Agreement ¶ 2; Cinq-Mars Cert. ¶ 8.

NGM submitted an affidavit and supporting documentation showing that it received claims from the State of New York, the City of New York, and the Commonwealth of Pennsylvania and resolved them by issuing payments of $818,904.86 to the State of New York; $1,168,839.36 to the City of New York; and $211,921.58 to the Commonwealth of Pennsylvania; and obtained corresponding releases and assignments.  *See* Cinq-Mars Cert. ¶¶ 4-5, Ex. 1 at NMG0016-37.  Subsequent to those payments, NGM entered into a judicially-approved settlement within Richmond's bankruptcy proceeding.  *See* Cinq-Mars Cert. ¶ 6.  All defendants executed the NGM Indemnity Agreement in favor of NGM as consideration for NGM's issuance of bonds to Richmond.  *See* Cinq-Mars Cert. ¶ 7.

The NGM Indemnity Agreement indicates that the defendants jointly and severally agreed that "[NGM] shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against [NGM] or [Richmond] upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors."  NGM Indemnity Agreement ¶ 6.

The NGM Indemnity Agreement also contains a provision expressly authorizing NGM "to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and [the Indemnitors] hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made."  NGM Indemnity Agreement ¶ 9.

b. *NGM's Alleged Damages*

To date, NGM's current damages in this matter are not less than $1,586,813.52. NGM paid $818,904.86 to resolve the State of New York's claim, $1,168,839.36 to resolve the City of New York's claim; and $211,921.58 to resolve the Commonwealth of Pennsylvania's claim. NGM has incurred attorneys' fees to date of no less than $161,062.58 and consultant's fees of no less than $19,990, amounting to no less than $181,052.58 in fees. After applying $450,000 in bank funds, secured for the purpose of writing bonds on behalf of Richmond, and after applying $343,904.86 recovered from Richmond's bankruptcy estate (in addition to the $781,095.14 recovered by NGM from Richmond's bankruptcy estate and transmitted directly to the State of New York), NGM's current, total damages are not less than $1,586,813.52. NGM continues to incur attorneys' fees for which defendants are jointly and severally obligated to reimburse NGM. *See* Cinq-Mars Cert. ¶ 10.

2. *Discussion*

a. *NGM's Prima Facie Evidence*

NGM has submitted a supporting affidavit that sets forth its losses under the bonds, copies of checks payable to the claimants, and a recitation of its attorneys' fees, consultant's fees, and expenses. *See* Cinq-Mars Cert., Ex. 1. The NGM Indemnity Agreement itself provides that such evidence is sufficient. *See* NGM Indemnity Agreement ¶ 2 ("In the event of payment by [NGM], the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefor to [NGM].").

As discussed above, under New York law, the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount.

Defendants have not questioned either the reasonableness of NGM's payments or NGM's good faith, and have limited their arguments to other legal grounds.

      b.    *Estoppel and Impairment of Collateral*

Defendants Bloomingdale Fuel, Manor, Richmond Superette, and Rossville Services (collectively, the "Bloomingdale Defendants") have opposed NGM's motion and cross-moved for summary judgment on the asserted grounds that, among other things, NGM is estopped from seeking recovery from the Bloomingdale Defendants because NGM recovered some funds as part of a judicially-approved settlement within Richmond's bankruptcy case. This argument has no merit. The Stipulation and Order By and Between the Chapter 7 Trustee and NGM Insurance Company Resolving Its Claim, Case No. 13-40620 (CEC) (E.D.N.Y. Bankr. Dec. 27, 2013), (the "Bankruptcy Order")[7] includes the following provision:

> [N]othing in this Stipulation shall prevent NGM from pursuing any claims against non-Parties, including but not limited to any and all non-Debtor indemnitors, for any amounts that NGM asserts are owed to it, including without limitation, a claim for indemnification and/or reimbursement of fees and expenses (including attorneys' fees) incurred by NGM.

Bankruptcy Order ¶ 4.

      c.    *Continuing Guaranty and the Change Riders*

After defendants signed the NGM Indemnity Agreement in August 2010, NGM issued three surety bonds to Richmond: (1) one dated August 20, 2010 in favor of New York City for $1.5 million (Bond No. S-442414); (2) one dated August 17, 2012 to New York State for $1.6 million (Bond No. S-442418); and (3) one dated November 7, 2011 to the Commonwealth of Pennsylvania for $336,000 (Bond No. S-809217). *See* Affidavit of Nabila

---

[7] The Bankruptcy Order is attached as an exhibit to the Certification of Eli Cinq-Mars, ECF No. 47-3, at NGM0038-45.

Hussain ("Second Hussain Aff."), Exs. D & E, ECF No. 50-1;[8] Cinq-Mars Cert., Ex. 1 at

NGM0001-0015. The New York City and New York State Bonds were subsequently modified

by surety change riders made solely between NGM and Richmond, on November 28, 2011 and

August 17, 2012, respectively. Second Hussain Aff., Exs. F & G.

Relying on *White Rose Food v. Saleh*, 99 N.Y.2d 589 (2003), the Hussain

Defendants argue that the surety riders, to which they did not consent, altered the New York City

and New York State bonds and thus relieved them of their obligations under the NGM Indemnity

Agreement. Under New York law, "[a] guarantor's obligation cannot be altered without its

consent; if the original note is modified without its consent, a guarantor is relieved of its

obligation." *Id.* at 591 (citation omitted).

But in this case, it is clear that the defendants consented. Pursuant to Paragraph 2

of the NGM Indemnity Agreement, defendants agreed, *inter alia*, to indemnify NGM for liability

that NGM may incur "in consequence of having executed . . . such bonds, or any renewals or

continuations thereof *or substitutes therefor*." NGM Indemnity Agreement ¶ 2 (emphasis

added). Defendants further agreed that the NGM Indemnity Agreement represented a continuing

obligation, contemplating the possibility of additional bonds being executed by NGM on behalf

of the defendants:

> THE INDEMNITORS HEREBY ACKNOWLEDGE THAT *THIS
> AGREEMENT IS INTENDED TO COVER WHATEVER BONDS*
> (WHETHER OR NOT COVERED BY ANY APPLICATION
> SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS -
> SUCH APPLICATION TO BE CONSIDERED BETWEEN THE
> PARTIES HERETO AS MERELY SUPPLEMENTARY TO
> THIS GENERAL AGREEMENT OF INDEMNITY) *MAY BE
> EXECUTED BY THE COMPANY ON BEHALF OF THE*

---

[8]     I refer to this affidavit as "Second Hussain Aff." to avoid confusing it with the affidavit Ms.
Hussain submitted in *Platte River v. Khan et al.*, No. 13-CV-3265 (JG)(SMG), ECF No. 94, which is referred to as
"Hussain Aff."

*INDEMNITORS, OR ANY ONE OF THEM, FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS,* UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

NGM Indemnity Agreement ¶ 17 (emphasis added, capital letters in the original).

Notwithstanding the above, the Hussain Defendants assert that none of the defendant guarantors ever received notice of the surety riders, which were signed only by Saquib Khan as the principal of Richmond. But this is of no moment because the defendants expressly waived notice of the execution of any bonds when they agreed

> [t]hat it shall not be necessary for [NGM] to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of [NGM] affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

NGM Indemnity Agreement ¶ 8.

The modification of the New York State and New York City bonds were well within the scope of the modifications contemplated by in the NGM Indemnity Agreement. This is particularly so given that the surety riders diminished the risk associated with the indemnity, *i.e.*, they lowered the penal sum of the New York City bond and converted the New York State bond to an excess bond with a $4,615,200 floor.[9] As such, the Hussain Defendants cannot

---

[9] The Hussain Defendants maintain that the August 2012 surety rider to the New York State bond increased their exposure from a total of $3,100,000 to $4,615,200. This does not appear to be accurate. The surety rider for the New York State Bond states only that it would be amended to make it an excess bond. *See* Second Hussain Aff., Ex. G; Cinq-Mars Cert., Ex. 1 at NGM0003. Accordingly, "[i]n the event of any claims by the obligee, State of New York, the Surety [NGM] would only be liable for covered losses . . . in excess of [$4,615,200], and then, only for such excess amount (in the aggregate) up to the penal sum of this bond." *Id.* The original penal sum of $1,600,000 for the New York State Bond remained the same. Therefore, the change rider most likely decreased the risk that the Indemnitors would have to pay NGM as a result of this bond because, as amended, NGM would incur liability only to the extent New York State's losses due to Richmond exceeded $4,615,200. Cinq-Mars Cert., Ex. 1 at NGM0001. NGM contends that another bonding company, Platte River, issued the primary bond in the penal sum of $4,615,200. NGM Reply Br. at 13.

persuasively claim that the surety riders, which most likely decreased the risk and amount of an indemnification claim, extinguished their obligations under the NGM Indemnity Agreement.

> ### d.   *Accord and Satisfaction*

Defendants advance the alternative argument that NGM's settlement within Richmond's bankruptcy proceeding constituted an accord and satisfaction relieving the defendants from any obligation under the NGM Indemnity Agreement.  Under New York law, an accord and satisfaction consists of (1) an agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim, and (2) execution of the agreement.  *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (1993).

There is no evidence that NGM reached an agreement with defendants that the settlement in the Richmond bankruptcy would satisfy defendants' obligations under the NGM Indemnity Agreement.  Indeed, as mentioned above, the Stipulation and Order resolving that claim unequivocally states otherwise.  *See* Bankruptcy Order ¶ 4.

> ### e.   *Impairment of Collateral Under UCC § 3-606*

Similarly, defendants Nabila Hussain, Richmond Fiesta, Richmond Service, and Richmond Food opposed NGM's motion and cross-moved for summary judgment on grounds that, among other things, NGM's judicially-approved settlement within Richmond's bankruptcy estate operates as an impairment of collateral and releases the defendants from their obligations arising from the NGM Indemnity Agreement.  Pursuant to NY UCC § 3-606(1)(b), a creditor holds collateral security interests concerning a debt obligation in trust for the guarantor and must preserve its interests therein for the latter's benefit.  *See, e.g.*, *ESL Fed. Credit Union v. Bovee*, 801 N.Y.S.2d 482, 484 (N.Y. Sup. Ct. 2005).  However, Article 3 of the Uniform Commercial Code does not apply to this case because the NGM Indemnity Agreement is not a negotiable instrument, nor was it ever attached to a negotiable instrument.  *See Port Distrib. Corp.*, 880 F.

Supp. at 209 (S.D.N.Y. 1995); *Mfrs. & Traders Trust Co.*, 617 N.Y.S.2d at 92. As such, the defense of impairment of collateral to the NGM Indemnity Agreement is unavailable.

      f.     *The Release of Nabila Hussain*

Defendant Nabila Hussain claims that she was released from her obligations under the NGM Indemnity Agreement by virtue of a letter that NGM issued, dated September 19, 2012 (the "September Letter"). *See* Second Hussain Aff. ¶ 5, Ex. I. The September Letter released Ms. Hussain from any future bonds that may issue to Richmond after September 6, 2012, but specifically provides, "You are reminded that, pursuant to the THIRTEENTH section of the GENERAL AGREEMENT OF INDEMNITY dated August 18, 2010; this release shall not apply to any bonds issued in support of Richmond Wholesale Co., Inc., prior to September 6, 2012." (emphasis in original).

Hussain seeks an interpretation of the September Letter that would serve to eliminate her obligation to indemnify NGM for any of Richmond's cigarette tax obligations that arose after September 2012. *See* Hussain Def.'s Opp. at 9, ECF No. 50-2. However, the September Letter clearly and unequivocally states that the release "shall not apply to any bonds issued in support of Richmond Wholesale Co., Inc. prior to September 6, 2012." Hussain does not dispute that the bonds subject to this action were issued prior to September 6, 2012.

      g.     *The Defaulted Defendants*

As to the Defaulted Defendants, "if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk -- on plaintiff's request, with an affidavit showing the amount due -- must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). The Clerk's Certificate of Default as to the Defaulted

Defendants issued on August 13, 2014.  *See* ECF No. 46.  Accordingly, a default judgment against these defendants is warranted.

CONCLUSION

For the above reasons, I grant plaintiff Platte River Insurance Company's motion for summary judgment against defendants Nabila Hussain, Mohammad Ali Hussain, Richmond Food, Inc., Bloomingdale Food Corp., Manor Bagels of SI, Inc., Richmond Service Station, and Richmond Fiesta Market, Inc., jointly and severally, in the amount of (a) Platte River's net loss to date of $1,979,634.79; (b) Platte River's net costs and expenses to date of $163,194.79; (c) additional legal fees to be incurred by Platte River; and (d) simple contractual interest on Platte River's loss, costs, and expenses at the rate of 12% per annum, all with post-judgment interest.

I grant Platte River's motion for default judgment against Saquib Khan, in the amount of (a) Platte River's net loss to date of $1,979,634.79; (b) Platte River's net costs and expenses to date of $163,194.79; (c) additional legal fees to be incurred by Platte River; and (d) simple contractual interest on Platte River's loss, costs, and expenses at the rate of 12% per annum, all with post-judgment interest.

I also grant plaintiff NGM Insurance Company's motions for summary judgment against defendants Nabila Hussain; Bloomingdale SI Inc. a/k/a Bloomingdale S.I. Inc.; Bloomingdale Fuel Inc. a/k/a Bloomingdale Fuel Corp.; Manor Bagels of SI, Inc.; Richmond Fiesta Market Inc. a/k/a Richmond Fiesta Market, Inc.; Richmond Service Station Inc. a/k/a Richmond Service Station (a Corporation); Richmond Superette, Inc.; Richmond Food, Inc.; and Rossville Services, Inc. a/k/a Rossville Services Inc, in the amount of (a) $1,586,813.52 in the principal amount, and (b) pre-judgment interest at the rate of $386.74 per day from October 4,

2013 through July 7, 2015,[10] for a total pre-judgment interest award of $247,900.34. This makes a total judgment amount of $1,834,713.86.

NGM's motion for default judgment against defendants Richmond Newsstand of Staten Island, Inc. a/k/a Richmond Newstand of Staten Island, Inc.; SK Arden Inc. a/k/a SK Arden, Inc.; and SKZ Gasolines Inc. a/k/a SKZ Gasoline Inc is also granted for the amount of $1,834,713.86 on the same basis. I deny defendants' cross-motion for summary judgment.

The Clerk is respectfully directed to enter judgment accordingly and to close both cases.


So ordered.


John Gleeson, U.S.D.J.


Dated: July 7, 2015
      Brooklyn, New York

---

[10]     NGM is entitled to pre-judgment interest at the statutory rate of 9% from the median date of NGM's payments to claimants New York State (December 10, 2013) and the City of New York and the Commonwealth of Pennsylvania (July 30, 2013), which is October 4, 2013. *See* New York C.P.L.R. §§ 5001 and 5004. $1,568,448.57 (.09) = $141,160.37 / 365 = $386.74 per day.